UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD WILSON,<br><br>                    Plaintiff,<br><br>vs.<br><br>KAYO OIL COMPANY dba CIRCLE K #5250; TED KOBAYASHI, SUCCESSOR TRUSTEE OF THE WALSH TRUST AGREEMENT U/D/T DATED 5/7/86,<br><br>                    Defendant. | CASE NO. 06-CV-1035 BEN (AJB)<br><br>**ORDER**<br><br>**(1) DISMISSING THE CASE FOR LACK OF SUBJECT MATTER JURISDICTION;**<br><br>**(2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS MOOT; AND**<br><br>**(3) ISSUING AN ORDER TO SHOW CAUSE WHY SANCTIONS SHOULD NOT BE IMPOSED AGAINST PLAINTIFF AND HIS ATTORNEYS** |

**I. INTRODUCTION**

Plaintiff Ronald Wilson alleges that Defendant Kayo Oil Company ("Kayo") discriminated against him on the basis of Plaintiff's physical disability. Plaintiff alleges violations of the Americans with Disabilities Act ("ADA"), California Disabled Persons Act, California Unruh Civil Rights Act, and California Health and Safety Code. Plaintiff moves for summary judgment, and Defendants oppose the motion, alleging, *inter alia*, that Plaintiff does not have standing to bring this lawsuit in a federal court. Defendants also move for FRCP Rule 11 sanctions. For the reasons that follow, the Court finds that Plaintiff does not have standing and dismisses this case for lack of subject matter

jurisdiction.

## II. FACTUAL BACKGROUND

Wilson is physically disabled and requires the use of a walking device, wheel-chair, or mobility-equipped van. Defendants own and operate a Circle K/76 gas station in San Marcos, California. Plaintiff alleges that he visited the gas station and encountered physical and intangible barriers, which interfered with or denied him ability to use and enjoy the goods, services, privileges, and accommodations offered at this facility. In addition to the list and photographs of the alleged barriers Plaintiff submitted an expert report noting what barriers existed at the gas station at the time of the expert's inspection.

## III. DISCUSSION

### A.  Plaintiff's Motion for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" when it can affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact for trial. *Id.* at 256. If the moving party meets this burden, the opposing party must set forth specific facts showing that a genuine issue remains for trial. Fed. R. Civ. P. 56(e). In deciding a motion for summary judgment, "the district court may limit its review to the documents submitted for the purposes of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001). The court does not have "to scour the record in search of a genuine issue of triable fact" and can "rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)).

Before the court can rule on a summary judgment motion, the party invoking federal jurisdiction must show that it has standing to bring a lawsuit in a federal court. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Snake River Farmers' Ass'n, Inc. v. Dep't of Lab.*, 9 F.3d 792,

795 (9th Cir. 1993). Because this Court finds that Plaintiff does not have standing to bring this lawsuit, the Court does not have jurisdiction to adjudicate his motion for summary judgment and, therefore, denies it as moot.

**B.     Standing**

The plaintiff bringing an action in the federal court has the burden to show that Article III standing exists. *Lujan*, 504 U.S. at 561. Specifically, the plaintiff must show (1) an injury in fact; (2) traceable to the challenged action of the defendant; and (3) likely to be redressed by a favorable decision. *Id.* at 560. As the Ninth Circuit explained, "[t]o meet this burden at the summary judgment stage, [the plaintiff] 'must set forth by affidavit or other evidence specific facts' supporting each element." *S.D. Myers, Inc. v. City and County of San Francisco*, 253 F.3d 461, 474 (9th Cir. 2001) (citing *Lujan*, 504 U.S. at 561).

In many ADA cases, where the defendant's noncompliance with Title III of the Americans with Disabilities Act has caused the plaintiff's injury, and where an injunction would redress this injury, "the second and third elements [of the standing test] are not at issue." *See, e.g., Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1137 (9th Cir. 2002); *Harris v. Stonecrest Care Auto Center, LLC*, 472 F. Supp. 2d 1208, 1215-16 (S.D. Cal. 2007) (Burns, J.); *Moreno v. G & M Oil Co.*, 88 F. Supp. 2d 1116, 1116 (C.D. Cal. 2000). Therefore, the Court will address only the "injury in fact" element, without ruling on the second and the third elements.

To show that he has suffered "an injury in fact," an ADA plaintiff must demonstrate that he is "likely to return to patronize the accommodation in question." *Harris*, 472 F. Supp. 2d at 1215-16 (Burns, J.). However, an ADA plaintiff cannot manufacture standing to sue in a federal court by simply claiming that he intends to return to the facility. Rather, in evaluating the likelihood of return, the courts examine four factors: (1) the proximity of the place of public accommodation to the plaintiff's residence; (2) the plaintiff's past patronage of defendant's business; (3) the definitiveness of the plaintiff's plans to return, and (4) the plaintiff's frequency of travel near the accommodation in question. *See, e.g., id.; Harris v. Del Taco, Inc.*, 396 F. Supp. 2d 1107, 1113 (C.D. Cal. 2005); *Molski v. Arby's Huntington Beach*, 359 F. Supp. 2d 938, 947 n.10 (C.D. Cal. 2005).

### *1.  Proximity of the Place to Plaintiff's Residence*

Lack of proximity is the strongest factor evidencing that Wilson does not have standing.[1] It is undisputed that Wilson lives over 500 miles away from the San Marcos Circle K/76 gas station.[2] The greater the distance between a plaintiff's residence and a defendant's place of business, the less likely it is that a plaintiff will suffer future harm. *See, e.g., Wilson v. Costco Wholesale Corp.*, 426 F. Supp. 2d 1115, 1121 (S.D. Cal. 2006) (Hayes, J.). The courts in this jurisdiction have overwhelmingly held that considerable distance, especially that greater than 100 miles, weighs against a finding of standing. *See, e.g., id.* (summarizing cases).

This Court is not unsympathetic to Plaintiff's claim that barriers make it more difficult for individuals with disabilities to travel. But Wilson essentially asks the Court to ignore the standing doctrine and to hold that an ADA plaintiff can sue *any* business failing to provide reasonable accommodations. Plaintiff cannot circumvent the Article III standing requirements in such a way. Nor may an ADA plaintiff create standing to sue various establishments merely on the off-chance he may visit these establishments in the future. Therefore, the considerable distance between Plaintiff's residence and Defendants' gas station is a factor heavily weighing against a finding of standing.

### *2.  Plaintiff's Past Patronage of Defendants' Business*

Likewise, Wilson's lack of consistent past patronage of the San Marcos Circle K/76 gas station indicates that he does not have standing to bring this lawsuit. In his declaration, Wilson alleged that he visited the San Marcos Circle K/76 gas station on at least seven separate occasions. He provided receipts for these visits, dated October 24, 2005; December 28, 2005; September 5, 2006; September 8, 2006; October 31, 2006; and November 1, 2006. Because the receipts do not bear Wilson's name on them, Kayo disputes that Wilson personally made these purchases. But even assuming that Wilson,

---

[1] In a factually similar case, brought by Mr. Wilson against a different defendant several years ago, this Court noted that the proximity issue was irrelevant when adjudicating the defendant's motion to dismiss. *See Wilson v. Wal-Mart Stores, Inc.*, 2005 WL 3477841, at *4 (S.D. Cal. Oct. 5, 2005) (Benitez, J.). This prong becomes relevant, however, at the summary judgment stage. Indeed, the Court is required to consider this prong "at the summary judgment stage, where more facts are available post-discovery and the standard of review requires an in-depth analysis of the action's merits[.]" *See Wilson v. PFS LLC*, 2006 WL 3841517, at *4 (S.D. Cal. Nov. 2, 2006) (Hayes, J.) (citing *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003)).

[2] In its determination regarding standing, this Court relies solely on undisputed facts or on facts as they are represented by Plaintiff, and not on any conflicting evidence.

in fact, made purchases at the Circle K/76 gas station on these dates, only the first two visits are relevant to the Court's analysis. As explained below, these two visits are insufficient to prove "past patronage."

Standing is determined on the basis of facts as they existed at the commencement of the action. *Lujan*, 504 U.S. at 571 n.5. Because Wilson filed this lawsuit on May 11, 2006, only the October 24, 2005 and December 28, 2005 receipts pre-date his suit. Consequently, Wilson cannot rely on his post-filing visits to prove standing. *See Costco Wholesale Corp.*, 426 F. Supp. 2d at 1119 (Hayes, J.) (noting that an ADA plaintiff "cannot establish standing by showing *later* actions") (citation omitted). Therefore, the Court will consider only the evidence of the first two visits when determining Wilson's past patronage of Circle K/76.

Similar to another recent decision prompted by Wilson's serial ADA filings, this Court concludes that the evidence of only two visits in two years preceding this lawsuit makes Wilson's patronage at the San Marcos Circle K/76 "less than regular." *See id.* at 1122 (Hayes, J.). These two purported visits by Wilson simply do "not indicate that he has standing to sue." *Id.* On the contrary, the dates of these visits; the fact that Wilson offered no legitimate reasons for traveling to San Marcos; and the evidence that Wilson made at least five post-filing visits and later sought statutory damages of $28,000 from this Court ($4,000 *per visit*) suggest that Wilson visited Kayo's gas station to inflate the potential settlement value of his case against Kayo. Because evidence of two visits is insufficient to prove standing, the Court holds that Wilson failed to satisfy the "past patronage" factor.

### 3. *Definite Plans to Return*

Plaintiff does not dispute that he lives over 500 miles away from Defendants' San Marcos Circle K/76 gas station. Nevertheless, Wilson claims that he intends to return to this particular establishment because he owned and operated a Union 76 gas station some twenty years ago. He claims that he "developed a 'taste' for 76/Circle K, and such weighs heavily in his favor with respect to likelihood of future visits." Having set forth this creative argument, Wilson, nevertheless, fails to explain why he needs to travel such a long distance to buy a $.30 gum at Circle K/76.

In fact, Wilson is not nearly as loyal to Circle K/76 gas stations as he claims to be. Tellingly, during his recent trips to Southern California, Wilson apparently paid visits to three other gas stations

in addition to Circle K/76. First, on the same day he filed this lawsuit, Wilson filed a virtually identical complaint in this Court against a San Marcos Shell Oil gas station. *See Wilson v. KA Management Inc.*, Case No. 06cv1037 (filed May 11, 2006). Second, on the same day, Wilson sued a San Marcos Chevron gas station, alleging the same boilerplate allegations as in the instant case. *See Wilson v. Chevron U.S.A. Inc.*, Case No. 06cv1036 (filed May 11, 2006). Third, on October 24, 2005, Wilson also visited a San Diego Exxon gas station – merely four hours after his purported visit to the San Marcos Circle K/76 gas station. *See* Ex. A (docket entry 27.2), *Wilson v. Kayo Oil Co.*, Case No. 06cv1035 (filed May 11, 2006).

The fact that Wilson traveled around Southern California, visiting gas stations belonging to at least four different companies greatly negates his argument that he likes to frequent the San Marcos Circle K/76 gas station due to his prior work history. On the contrary, it may suggest that he was traveling to various places of accommodation specifically with the purpose of setting up future lawsuits.[3]

Likewise, the mere fact that Plaintiff frequently drives around Southern California does not give him "standing to sue every public accommodation located anywhere" in that area. *Harris v. Del Taco, Inc.*, 396 F. Supp. 2d 1107, 1114-15 (C.D. Cal. 2005). Plaintiff's assertions that he would stop at Circle K/76 if he needs gas or wants to buy a lottery ticket are "too conjectural and hypothetical to satisfy the requirement that a plaintiff must demonstrate a threat of imminent future injury in order to obtain injunctive relief." *Id.* While acknowledging that his "return 'date' and 'time' are impossible to specifically state," Wilson wants this Court to find that "his past patronage" and his "statement that he will return in the future" are sufficient to confer standing on him. However, "Plaintiff cannot establish standing by showing *later* actions" or by making general promises to return to the area in the

---

[3] On October 24, 2005, Wilson apparently "traveled to San Diego, rented a car, bought food at two different dining establishments in San Marcos, and returned home the same day." Wilson Decl. ¶ 18 (docket entry 18), *Wilson v. P.F.S. LLC*, Case No. 06cv1046 (filed May 11, 2006). At 11:19 AM that day, he purchased a Coke and cookies at San Marcos' McDonald's for $2.21. Ex. D (docket entry 8), *Wilson v. P.F.S. LLC*, Case No. 06cv1046 (filed May 11, 2006). At 11:46 AM that day, Wilson traveled to Circle K/76 gas station where he purchased a $.30 piece of gum. Finally, at 4:12 PM that day, Wilson then traveled back to San Diego, where he visited an Exxon gas station. On December 25, 2005, Wilson again traveled to San Diego, "checked into a hotel, made multiple purchases in Chula Vista, San Diego, Poway, Mira Mesa, Bonita, and San Marcos, and then returned home December 28, 2005." Wilson Decl. ¶ 19, *Wilson v. P.F.S. LLC*, Case No. 06cv1046 (filed May 11, 2006).

future "without any description of concrete plans." *Costco Wholesale Corp.*, 426 F. Supp. 2d at 1120 (Hayes, J.) (citation omitted). As this Court previously noted, "Wilson has, at best, professed a possible intent" to return. *Id.* Therefore, Wilson failed to show that he has definite plans to return to the San Marcos Circle K/76 gas station in the foreseeable future.

### 4. *Frequency of Travel Near the Accommodation*

Wilson claims that he frequently visits Southern California because (1) he was raised there; (2) his friends live there; (3) his family members are buried there; (4) he likes to attend his high school reunions at Imperial Beach; and (5) his ADA activities require his occasional presence in Southern California. Wilson relies on *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133 (9th Cir. 2002), to argue that his ties to Southern California justify a finding that he has standing to sue Southern California businesses. Although the plaintiff's preference for a specific brand or an establishment may be sufficient to confer standing on him, *Pickern* requires more than mere allegations of intent. *See id.* at 1134, 1138. The plaintiff in *Pickern* offered the following evidence in support of standing: (1) the store in question was seventy miles away from his home; (2) the store was located near his grandmother's house; (3) the plaintiff visited his grandmother "frequently" and tried to visit her every Sunday; and (4) he preferred to shop at this particular store. *Id.* at 1135. Based on this evidence, the Ninth Circuit found that the plaintiff had standing to sue the store in question.

Meanwhile, Wilson failed to present evidence that would satisfy the *Pickern* court's analysis. Wilson essentially seeks a ruling from this Court, which would set a precedent for him to be able to sue any and all businesses in Southern California. Although he offered no evidence tying him to the San Marcos Circle K/76 gas station or addressing his need to frequent the nearby area, he argues that the fact that he likes to visit Southern California 3-4 times a year is sufficient to confer standing on him. This Court cannot issue such a "blank check" conferring broad standing on Plaintiff.

In order to prove that he frequently travels to the nearby area, an ADA plaintiff must show that he has specific ties to the area in question. *See id.* (noting that the plaintiff's grandmother lived close to the defendant's store, that the plaintiff visited his grandmother almost every week, and that he wanted to patronize the store when he visited his grandmother). Additionally, the plaintiff must have a legitimate, *bona fide* purpose for his visits. Finally, although the Court is hesitant to draw

geographical limitations, traveling for more than 20-30 miles to purchase an ordinary item readily available at a closer location is clearly not "nearby" and may suggest that the plaintiff undertook this trip for improper purpose of setting up future lawsuits.

The Court, therefore, finds that Plaintiff failed to carry his burden to show he has standing to file his action in a federal court. The Court further finds that Wilson's "ADA claims are a sham, used as a pretext to gain access to the federal courts, while he pursues remedies that are available – sometimes exclusively – under California state law." *Molski v. Mandarin Touch Rest.*, 347 F. Supp. 2d 860, 867 (C.D. Cal. 2004). Although "raising multiple claims, by itself, is not unethical or vexatious . . . it is consistent with an overall pattern of behavior that demonstrates" Wilson's motivation to extort a cash settlement from Kayo. *See id.* at 866 ("The record before this Court leads it to conclude that these suits were filed maliciously, in order to extort a cash settlement.").

Because his ADA claim is the only claim that would allow Wilson to proceed in a federal court, the Court declines to exercise supplemental jurisdiction over Wilson's remaining claims. Wilson's action is, therefore, dismissed in its entirety for lack of subject matter jurisdiction.

**C.   Sanctions**

On May 18, 2007, Defendants Kayo Oil Company and Ted Kobayashi filed a motion asking the Court to impose FRCP Rule 11 sanctions against Plaintiff Ronald Wilson and his attorneys – Lynn Hubbard, Scottlynn Hubbard, and the Disabled Advocacy Group. On June 1, 2007, Wilson filed an opposition to the motion for sanctions. Wilson and his attorneys, therefore, had an adequate notice and an opportunity to respond to Defendants' motion. *See Molski v. Evergreen Dynasty Corp.*, --- F.3d ---, 2007 WL 2458547, at *12 (9th Cir. 2007).

In support of their motion for sanctions, Defendants point out that, in light of a recent decision from this Court dismissing another one of Wilson's lawsuits for lack of standing, Plaintiff and his attorneys "knew full well that they did not have standing to file this lawsuit." *See Costco Wholesale Corp.*, 426 F. Supp. 2d at 1121 (Hayes, J.). Defendants further contend that Wilson's "repetitive ADA Title III litigation history also weighs heavily in favor of finding [his] token visits were designed solely to set up lawsuits." Finally, Defendants allege that Wilson's five post-filing visits indicate that he tried to bolster his claim for standing and damages, after learning that Defendants would not quickly settle.

As we previously noted, "the concern . . . over ADA litigation abuse is amply warranted." *Wilson v. Wal-Mart Stores, Inc.*, 2005 WL 3477841, at *5 (S.D. Cal. Oct. 5, 2005) (Benitez, J.). Congress passed the Americans with Disabilities Act to eliminate discrimination against persons with disabilities. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 688 (2001). The goal of Title III of the ADA was to ensure that places of public accommodation afford access to disabled individuals who would otherwise encounter barriers making it difficult for them to enjoy the goods, services, privileges, and advantages available to the general public. *See id.*

Nevertheless, contrary to the legitimate goal of the ADA, the Act is sometimes used for illegitimate purposes, with serial plaintiffs like Wilson preying on businesses across the country in hopes of extorting quick settlements. As it turns out, the threat of lawsuits and money damages in ADA cases is an "effective inducement to settle" quickly. *Wilson v. Wal-Mart Stores, Inc.*, 2005 WL 3477827, at *3 (S.D. Cal. Oct. 12, 2005) (Benitez, J.) (citing *Mandarin Touch Rest.*, 347 F. Supp. 2d at 866). In fact, 99.8% of ADA lawsuits filed by Wilson's attorney, Lynn Hubbard, settle before going to trial. *Wilson v. Pier 1 Imports (US), Inc.*, 411 F. Supp. 2d 1196, 1201 (E.D. Cal. 2006).[4] A high settlement rate, taken alone, may not necessarily indicate that the plaintiff is filing lawsuits in bad faith. *Evergreen Dynasty Corp.*, --- F.3d ---, 2007 WL 2458547, at *2. Likewise, a large volume of suits, "standing alone, does not warrant a pre-filing order." *Id.* (citation omitted). But, taken together with other factors, this evidence may "indicate an intent to harass defendants into agreeing to cash settlements." *Id.* (citation omitted). Where, as here, this evidence is accompanied by other factors – such as (1) the plaintiff's "shopping spree" to a variety of establishments; (2) making petty purchases and retaining receipts as evidence; (3) visiting similar establishments on the same day; and (4) traveling to a distant location for one day only to spend most of that day driving around to visit gas stations, restaurants, and stores – this evidence indicates that an ADA plaintiff is setting up lawsuits for purposes of extorting money from the defendants.

This case, therefore, presents yet another example of the abuse of the ADA litigation. Cases such as this one, brought for an improper purpose and contrary to the existing law on federal

---

[4] The Court takes judicial notice that attorney Lynn Hubbard filed 446 and Plaintiff Ronald Wilson filed 15 similar lawsuits in this district within the last four years. The vast majority of these cases settled.

jurisdiction needlessly tie up the parties' and the court's resources. More importantly, they tend to dilute the value of meritorious ADA actions and to diminish the credibility of legitimate claims.

Federal Rules of Civil Procedure Rule 11 provides, in pertinent part, that the court can impose sanctions upon the parties or their attorneys if the court finds that they filed a lawsuit for "improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Fed. R. Civ. P. 11. Rule 11 further provides that sanctions are appropriate if the court determines that the party's "claims, defenses, and other legal contentions . . . are [not] warranted by existing law or by a nonfrivolous argument" for modifying existing law. *Id.*

Additionally, the Court can declare Plaintiff a vexatious litigant and impose a pre-filing order on his attorneys. *See, e.g., Evergreen Dynasty Corp.*, --- F.3d ---, 2007 WL 2458547, at *13-15 (affirming the district court's decision declaring an ADA plaintiff a vexatious litigant and imposing a pre-filing order on his attorneys); *Mandarin Touch Rest.*, 359 F. Supp. 2d at 933-34 (imposing a pre-filing order on an ADA plaintiff's attorneys, in part, due to "an unusual number of settlements" evidencing an extortion scheme).

The Court's lack of subject matter jurisdiction over a case does not strip it of the power to award sanctions. *Branson v. Nott*, 62 F.3d 287, 293 n.10 (9th Cir. 1995). Therefore, the Court orders Ronald Wilson, Lynn Hubbard, Scottlynn Hubbard, and the Disabled Advocacy Group to show cause why the Court should not "exercise its inherent power" to declare Plaintiff a vexatious litigant, impose a pre-filing order on his attorneys, or award monetary sanctions to Defendants. *See Mandarin Touch Rest.*, 347 F. Supp. 2d at 867.

## IV.  CONCLUSION

For the reasons stated above, the Court finds that Plaintiff Ronald Wilson does not have standing to bring this lawsuit in the federal court. The Court, therefore, dismisses this case for lack of subject matter jurisdiction and denies Plaintiff's motion for summary judgment as moot.

Furthermore, the Court orders Plaintiff and his attorneys to show cause on or before November 13, 2007 why it should not impose sanctions on them. Defendants should respond on or before November 27, 2007.

**IT IS SO ORDERED.**

DATED: October 25, 2007

ROGER T. BENITEZ
United States District Judge